MARGARET S. RICHARDSON, Appellant, v. HERBERT F. BRENNAN and IRENE BRENNAN, Husband and Wife, Respondents.

No. 7966

April 26, 1976                              548 P.2d 1370

---

*Eric Zubel,* of Las Vegas, for Appellant.

*Monte J. Morris,* of Boulder City, for Respondents.

**OPINION**

By the Court, BATJER, J.:

Appellant commenced an action against respondents seeking to quiet title to a claimed driveway easement over respondents' property and to permanently enjoin respondents from interfering with her use of such easement. At trial, after the close of appellant's case, the district court granted respondents' NRCP 41(b) motion to dismiss. This appeal followed.

The complaint alleged an easement by express grant, implication or prescription. On a motion for involuntary dismissal under NRCP 41(b) plaintiff's evidence and all reasonable inferences must be accepted by the trial court and the evidence

must be interpreted in favor of plaintiff. *Bearden v. City of Boulder City,* 89 Nev. 106, 108, 507 P.2d 1034 (1973). Interpreting the evidence introduced and the inferences that can be drawn from it in appellant's favor we find she presented a case that requires respondents to answer her evidence which establishes that an easement by prescription exists appurtenant to her real property.

Appellant is the owner of Lot 14A, Block 5, 618 Arizona Street, and respondents are the owners of Lot 14, Block 5, 421 Avenue I, in Boulder City, Nevada. Respondents' lot lies with frontage to the west on Avenue I. The driveway in question begins on Avenue I and divides to circle respondents' house with an upper and lower roadway. Appellant's lot 14A is on the eastern boundary of respondents' lot and the front of her house and garage face respondents' lot and Avenue I. The only access to appellant's garage is through the lower roadway from Avenue I across respondents' lot.

Appellant's lot does not abut any public street. In 1966 Boulder City opened a gravelled alleyway from Arizona Street to the east of appellant's lot; however, it only allows appellant to park at the rear of her house and conveniently enter her home through the back door. Without an easement across respondents' lot appellant cannot drive a vehicle to the front of her lot and enter her garage.

Prior to the official incorporation of Boulder City the property which is now within the boundaries of Boulder City was governed and controlled by the United States Government, Bureau of Land Reclamation, which leased land to those who built homes on the property. Congress, by the Boulder City Act of Sept. 2, 1958, Pub. L. No. 85–900, 72 Stat. 1726, authorized the Secretary of the Interior, upon the incorporation of Boulder City, to transfer to the municipality without cost the improved lands within the municipal area, subject to existing leases. The leases were to be assigned to the municipality provided they be amended to offer the lease holders options to purchase.

Appellant's predecessor in interest to lot 14A held a ten year lease from the federal government from July 1, 1951 to June 30, 1961. On June 27, 1960, Boulder City as a municipal corporation issued its quitclaim deed to the lease holder. The deed was a standard quitclaim form which recited the conveyance was subject to easements, reservations, conditions and covenants of record but contained no mention of a driveway easement appurtenant to the lot. Title passed by inheritance to Frances Spencer Belknap who on October 28, 1964 deeded

the property to appellant. That deed also failed to mention any easement.

Respondents' lot 14 was originally leased by the federal government to respondents' predecessors for the ten year period of July 1, 1951 to June 30, 1961. Prior to the expiration of the ten year term the lease was assigned several times. On September 2, 1958, it was assigned to respondents, and Boulder City quitclaimed the property to respondents on October 10, 1960. The deed was again a standard quitclaim form and recited it was subject to easements of record but did not mention any driveway easement to lot 14A.

An easement by prescription can be created through five years adverse, continuous, open and peaceable use. Stix v. LaRue, 78 Nev. 9, 11, 368 P.2d 167 (1962); Howard v. Wright, 38 Nev. 25, 29, 143 P. 1184 (1914). Here the evidence relative to adverse use is to some degree in conflict but must be considered in a light most favorable to appellant. Appellant received her deed to the property on October 28, 1964. She testified at trial that when she bought the house her predecessor indicated the driveway across respondents' lot had always been used and could be used as long as appellant wanted. Respondent, Herbert F. Brennan, testified that when appellant moved in he explained the boundaries of the property and gave her permission to use the driveway. Despite the conflict concerning permission in 1964, it is clear that a dispute arose in April, 1968, when appellant indicated her claim of right in the driveway. At that time Irene Brennan presented appellant with a driveway use agreement which appellant failed to sign. Appellant testified she did not sign the agreement because she believed she would lose what right she had in the driveway, and if respondents in reliance upon such an agreement closed the driveway she would have been unable, without difficulty, to use her front door and garage. Appellant, visitors and salesmen continued to use the driveway until October, 1973, when respondents, after warning appellant, blocked the lower roadway with a boat and the upper roadway with a jeep.

Respondents rely on Turillas v. Quilici, 72 Nev. 289, 303 P.2d 1002 (1956), and Howard v. Wright, supra, for the proposition that where a roadway is established or maintained by a landowner for his use, the fact that his neighbor also uses it under circumstances which in no way interferes with use by

the landowner himself, no presumption of adverseness is created. The factual posture of this case precludes the application of *Turillas* and *Howard*. Instead we apply the holding in Stix v. LaRue, supra, that no presumption of permissiveness will arise where the road was for many years the only means of ingress to and egress from the dominant estate and was not established by the owner of the servient estate for his own use.

The driveway across respondents' lot has been used by the occupants of lot 14A since the lease from the federal government to appellant's predecessors became effective on July 1, 1951. The driveway was in existence and being used by the lessee of lot 14A when respondents were assigned their lease and was still being used when respondents purchased the property from Boulder City on October 10, 1960. The driveway is the only means of ingress to and egress from the front of appellant's house and garage. In fact, it was the only access to the house until Boulder City opened the alleyway access to the rear of appellant's house from Arizona Street.

Respondents contend that they have continuously asserted control over the driveway by closing the driveway to establish and maintain that control. They refer specifically to appellant's testimony in which she stated that on at least one occasion respondents put up a private drive sign and posted the driveway closed for 24 hours after warning appellant the night before. Appellant stated she had discussed the purpose of the closing with respondents and understood that according to the statutes of Boulder City a private road had to be posted closed for 24 hours in order to keep the city from dedicating it to the public. Such testimony, without more, merely reveals the road was closed by mutual consent of the parties to keep the driveway from becoming public, and respondents acknowledged appellant's right of use in the driveway by contacting her to warn of the closing. See Sufficool v. Duncan, 9 Cal.Rptr. 763 (Cal. App. 1960).

Other evidence tending to show appellant's use as free and continuous and respondents' acknowledgment of that use is found in appellant's testimony describing the maintenance of the driveway. On several occasions respondent Herbert F. Brennan purchased gravel to spread on the driveway. On three or four occasions within the ten years prior to commencement of this action, appellant helped respondents spread the gravel around with a rake, and at least once, in 1971, paid $20.00 of the $40.00 cost of the gravel. See Feldman v. Knapp, 250 P.2d

92 (Ore. 1952); Gano v. Strickland, 52 So.2d 11 (Miss. 1951). See also LeDeit v. Ehlert, 22 Cal.Rptr. 747 (Cal.App. 1962); Sufficool v. Duncan, supra; DiLeo v. Pecksto Holding Corp., 109 N.E.2d 600 (N.Y. 1952).

Viewing the evidence most favorably to appellant, she has proved a "sufficient case" to establish a prescriptive easement appurtenant to her lot. NRCP 41(b). The judgment of the district court is reversed and the case is remanded for further proceedings to afford respondents an opportunity to contravene the prescriptive easement.

GUNDERSON, C. J., and ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.