**Joseph McGILL and David McGill, Appellants,**

v.

**Gust K. WAHL and Linda C. Wahl, Appellees.**

No. S–4483.

Supreme Court of Alaska.

Sept. 18, 1992.

Paul D. Kelly, Kelly & Patterson, Anchorage, for appellants.

Albert Maffei, Anchorage, for appellees.

Kenneth C. Powers, Asst. Atty. Gen., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for amicus curiae, State of Alaska.

Robert L. Breckberg, Boyko & Flansburg, Anchorage, for amicus curiae, Robert Miller and Jo Ann Miller.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

The McGills appeal the superior court's grant of an injunction against the blocking of a roadway across their property to the Wahls' property. The injunction thus rec-

ognized a prescriptive easement held by the Wahls. The McGills also appeal the superior court's denial of a jury trial, and its award of attorney's fees. We affirm the court's decision to deny the jury trial and grant the injunction. We reverse the award of attorney's fees and remand the issue for reconsideration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Since the early 1950s the Wahl and McGill families have owned adjacent properties in Dillingham. Appendix 1, an adaption of trial exhibit 2, offers a plat format of the area, with landmarks and the roadway or "gravel drive" identified.

The Wahls' lots are platted as lots 11, 12 and 25, and the McGills's as lots 4 and 6. Access to the Wahls' property was via a roadway over lot 6. Originally the roadway was "just a couple of wheel tracks" which was used primarily by Gust Wahl's father for access from Dillingham Airport Road to his properties at lots 12 and 25.

From the early 1960s until 1966 the Bieker family lived on a portion of lot 11 and used the roadway for access to its land. In 1975 the Wahls purchased this part of lot 11 from the Biekers and lived there with their family until 1977. Thereafter the Wahls rented out the house on lot 11 and lived in a house on lot 25.[1] The sole automobile access to the house on lot 11 was via the roadway. In 1986, the Wahls took possession of the lot 11 house and used it mostly for storage and as a space for Linda Wahl's businesses.

In 1977 Highway 1 was constructed. It bisected lot 25. The roadway was then used by other vehicles to get from Highway 1 to the Dillingham Airport Road. In 1979 Fred Wahl, who occupied lot 12, blocked off access to lot 12 from the roadway to stop this traffic. Most of the roadway was thereafter only used as access for lot 11 and a half acre lot directly north of the Wahls' lot 11 parcel owned at one time by Sonny Olson. The Dillingham Airport

Road end of the roadway was also used by the McGills as part of their driveway to the "new" house on lot 4.

The Wahls and the McGills maintained a friendly relationship until the present dispute arose. The Wahls also maintained cordial relationships with the various renters of the lot 11 house.

In April 1989 David McGill, the son of Joseph McGill and Katherine McGill, the owners of the land, began constructing a house on lot 6 right along the roadway. In August 1989 David blocked the roadway by placing lumber and other construction material across it. When Gust Wahl asked that the roadway be cleared David refused and informed Wahl that the roadway would remain closed.

The Wahls filed a complaint on April 17, 1990, seeking an injunction against the obstruction of the roadway and damages. The McGills answered, requesting a jury trial. The Wahls amended their complaint by deleting their damages claim. After a bench trial, the trial court granted the injunction, concluding that the Wahls were entitled to a permanent prescriptive easement.

Three days before the entry of judgment the Wahls filed a motion for attorney's fees. The judgment awarded the Wahls $3,265.94 in costs and $8,000 in attorney's fees. The McGills did not file their opposition to the motion for attorney's fees until eight days after the judgment.

## II. DISCUSSION

### A. RIGHT TO JURY TRIAL

The McGills asked for, but were denied a jury trial. The trial court based its decision on the fact that the request for the injunction was akin to a quiet title action and thus a claim in equity and not in law. The McGills appeal the denial of the jury

---

**1.** Apparently the access to the house on lot 25 after 1977 was via Highway 1. Although the houses on lots 11 and 25 were less than 80 feet apart, there was no driveway connecting the houses. Rather there was only a footpath up the hill to the house on lot 11.

trial, claiming that the action is more like an ejectment.[2]

The right to a jury trial in actions at law is guaranteed by article I, section 16 of the Alaska Constitution.[3]

The Alaska Constitution preserves a jury trial only for those causes of action which are legal, and not equitable in nature. *State v. First Nat'l Bank of Anchorage,* 660 P.2d 406, 423–24 (Alaska 1982). A claim for a prescriptive easement, like a claim for adverse possession, is in the nature of an equitable claim and was historically tried in the courts of equity. *See Agnew v. Haskell,* 71 Or.App. 357, 692 P.2d 650, 651–52 (1984). We hold that the McGills were not entitled to a jury trial as a matter of right.

The Wahls did not specify in their complaint on which section of the Alaska Statutes they were relying. However, the complaint alleged that the elements of a prescriptive easement existed. Therefore we treat their action as one brought under the statute of limitations, AS 09.10.030.[4]

Alaska Statute 09.10.030 not only establishes a time limit during which an action to recover real property may be maintained, but also constitutes the *method* by which a claimant may establish title through adverse possession. *Bentley*

*Family Trust v. Lynx Enter.,* 658 P.2d 761, 765 n. 10 (Alaska 1983). We believe that the statute also constitutes a method for establishing an easement through prescription. *See Hamerly v. Denton,* 359 P.2d 121, 125 (Alaska 1961) (holding that the statute of limitations may be "used as a basis" of establishing an easement). Although originally the statute was interpreted as merely the basis of "an appropriate action," *Ringstad v. Grannis,* 12 Alaska 190, 196 (9th Cir.1948) (serving as basis of an ejectment action), we have not required the use of another statute as the actual method of acquiring title. *See, e.g., Bentley Family Trust,* 658 P.2d at 766 (recognizing title by adverse possession without reference to the statute for quieting title); *Peters v. Juneau–Douglas Girl Scout Council,* 519 P.2d 826, 830 n. 13 (Alaska 1974); *Ayers v. Day & Night Fuel Co.,* 451 P.2d 579, 581 (Alaska 1969). Thus the party claiming a prescriptive easement need not bring the action as either an action to quiet title, AS 09.45.010,[5] or an ejectment, AS 09.45.630.[6]

We reject the suggestion that whether the plaintiff is in possession of the disputed property at the time of the filing of the claim for a prescriptive easement under AS 09.10.030 is determinative of the

---

2. Also submitting briefs on this question were amici curiae State of Alaska and Robert Miller and Jo Ann Miller. Both parties' standing derives primarily from the case of *State v. Miller,* Case No. 3AN–88–10139 Civil (Alaska Super., August 13, 1991). In that case, the superior court denied a public prescriptive easement across the Millers' land for the use of an access road into Chugach State Park. The superior court held in that case that the Millers were entitled to a jury trial.

3. Section 16. Civil suits; Trial by Jury. In civil cases where the amount in controversy exceeds two hundred fifty dollars, the right of trial by a jury of twelve is preserved to the same extent as it existed at common law. The legislature may make provision for a verdict by not less than three-fourths of the jury and, in courts not of record, may provide for a jury of not less than six or more than twelve. Alaska Const. art. I, § 16.

4. Alaska Statute 09.10.030 reads as follows:
 Actions to recover real property in 10 years. No person may bring an action for the recovery of real property, or for the recovery of the

possession of it unless commenced within 10 years. No action may be maintained for recovery unless it appears that the plaintiff, an ancestor, a predecessor, or the grantor of the plaintiff was seized or possessed of the premises in question within 10 years before the commencement of the action.

5. Alaska Statute 09.45.010 reads as follows:
 Action to quiet title. A person in possession of real property, or a tenant of that person, may bring an action against another who claims an adverse estate or interest in the property for the purpose of determining the claim.

6. Alaska Statute 09.45.630 reads as follows:
 Actions for recovery of real property. A person who has a legal estate in real property and has a present right to the possession of the property may bring an action to recover the possession of the property with damages for withholding it; however, recovery of possession from a tenant shall be made under AS 09.45.060—09.45.160.

question of whether the claim is treated as a legal or equitable one. *Compare Yaquina Bay Timber & Logging Co. v. Shiny Rock Mining Corp.*, 276 Or. 779, 556 P.2d 672, 673 n. 1 (1976) (noting that the choice between an action to quiet title or an ejectment "depends upon who is in possession of the land"). Territorial courts only applied the possession test in distinguishing between actions for ejectment and actions to quiet title. *See Elbing v. Hastings*, 3 Alaska 125, 129–31 (D.Alaska 1906) (holding that where the "defendants were in possession of the property at the time of bringing the action, the suit must be dismissed for failure of proof—for want of jurisdiction in equity, and because the plaintiffs would have a plain, speedy, and adequate remedy at law").

Our rule prevents the awkward situation where a party who takes the aggressive stance of seizing possession of disputed property is awarded the right to a jury trial. In this case, the McGills abruptly closed the road and began construction on David McGill's house. We choose not to adopt a policy which encourages unilateral self-help and confrontational behavior.[7]

## B. PRESCRIPTIVE EASEMENT

■ To establish a prescriptive easement a party must prove that (1) the use of the easement was continuous and uninterrupted; (2) the user acted as if he or she were the owner and not merely one acting with the permission of the owner; and (3) the use was reasonably visible to the record owner. *Swift v. Kniffen*, 706 P.2d 296, 302 (Alaska 1985) (quoting *Alaska Nat'l Bank v. Linck*, 559 P.2d 1049, 1052 (Alaska 1977)). These are the same requirements to make out a claim of adverse possession.[8] *Id.* The required period of adverse use is ten years. *Id.;* AS 09.10.030.

■ The Wahl's continuous and clearly visible use of the property is not disputed.[9] The McGills claim that the Wahls failed to establish the second element, also known as the hostility element, for the required period of prescription.

The trial court found "That Plaintiffs have acted as if they were the owners and not merely acting with the permission of the owner." This finding is not clearly erroneous.[10] There is a presumption that the use of land by an alleged easement holding was permissive. Ordinarily, this presumption is overcome only by " 'proof of a distinct and positive assertion of a right hostile to the owner.' " *Dillingham Commercial Co. v. City of Dillingham*, 705 P.2d 410, 417 (Alaska 1985) (quoting *Hamerly v. Denton*, 359 P.2d 121, 126 (Alaska 1961)).

■ However, in this case it would be inappropriate for us to presume that the Wahls were acting as merely permitted users of the roadway. Such a presumption does not arise where a roadway was not established by the owner of the servient

7. The McGills and amicus curiae Millers contend that they are entitled to a jury trial on the authority of *Hollis v. Tomlinson*, 540 So.2d 51 (Ala.1989), and *Frahm v. Briggs*, 12 Cal.App.3d 441, 90 Cal.Rptr. 725 (1970). In these cases, the courts held that actions for injunctions against interference with a prescriptive easement were necessarily legal and not equitable causes of action, because in order to enforce the right to an easement in equity, the right first had to be established in a separate action at law. *Hollis*, 540 So.2d at 52; *Frahm*, 12 Cal.App.3d at 445, 90 Cal.Rptr. 725. However, this first step of establishing title at law was rejected long ago by Alaska courts. *Pacific Coal & Transp. Co. v. Pioneer Mining Co.*, 205 F. 577, 579–80 (9th Cir.1913) (discussing Alaska law). Under Alaska statutes, the plaintiff in possession does not have to show that it has a right to judgment at

law in a separate proceeding before seeking to quiet title in equity. *Id.;* AS 09.45.010.

8. Adverse possession however focuses on "possession" rather than "use." *Linck*, 559 P.2d at 1052.

9. The superior court found that the prescriptive period ran from October 1975 when the Wahls purchased lot 11 from the Biekers until August 1989 when David McGill blocked the roadway.

10. This court has previously characterized the findings of the elements of prescriptive easements as factual ones. *Swift*, 706 P.2d at 303. This court will overturn such findings only if they are clearly erroneous and there exists a definite and firm conviction that a mistake has been made. *Donnybrook Bldg. Supply v. Interior City Branch, First Nat'l Bank of Anchorage*, 798 P.2d 1263, 1266 (Alaska 1990).

estate for its own use but was for many years the only means of passage to the dominant estate. *Richardson v. Brennan*, 92 Nev. 236, 548 P.2d 1370, 1372 (1976).[11]

The roadway originally was and continuously has been used as access to the lots behind the McGills' property. The roadway existed and was used by the Nels Wahls before the McGills came to the property. Although other lot owners now use Highway 1 to get to their lots, the use of the roadway has never changed with respect to lot 11. The McGills, having come to land burdened by the roadway, cannot now claim that the users of the roadway were acting merely with their permission. Likewise, the McGills without any affirmative action cannot now claim that they intended to permit the use of the road by the other landowners.[12]

We reject the suggestion that the Wahls' nonexclusive use of the roadway precludes a prescriptive easement. Besides the McGills, Olson used the roadway to access his property when he was developing it. Also, until Fred Wahl blocked the access across lot 12, the roadway was used occasionally by others to travel from Highway 1 to Dillingham Airport Road.

■ Exclusivity of use is not generally a requirement for a prescriptive easement as it is for a claim of adverse possession. 2 John S. Grimes, *Thompson on the Modern Law of Real Property* § 343, at 215–16 (1980 rep.). However, exclusive use will be a factor in determining whether a use was under a claim of right.

■ We are not persuaded that the Wahls' use of the roadway was so shared as to overcome the presumption that the easement existed. The Wahls, their predecessors and their renters on lot 11 were the primary and only consistent users of the roadway. The McGills used only the very northern part of the roadway across lot 4

as their driveway. It would not be expected that an easement holder would object to traffic on or use of that part of a roadway which did not interfere with its use.

## C. LACHES

The McGills also contend that the Wahls' claim of the prescriptive easement was barred by laches. They maintain that the ten month delay between the erection of the barricade and the filing of the complaint unfairly prejudiced David McGill, who continued to build his house in the belief that the Wahls had acceded to the closure of the roadway to lot 11. The Wahls claim that the ten month delay was not unreasonable and that they filed the complaint as soon as it was economically feasible. The Wahls also claim that little construction work was done during the ten month period and thus David McGill was not prejudiced by the delay.

The trial court found that laches did not bar the action because, even though the complaint was not filed until April 1990, David McGill had notice of the Wahl's claim against him in August 1989.

■ We have previously held that for laches to apply the defendant must show "(1) that the plaintiff has unreasonably delayed in bringing the action, and (2) that this unreasonable delay has caused undue harm or prejudice to the defendant." *City and Borough of Juneau v. Breck*, 706 P.2d 313, 315 (Alaska 1985). In measuring the plaintiff's delay, the key determination is "when, in light of any resulting prejudice to defendants, it became reasonable to expect plaintiffs to act upon the wrong." *Moore v. State*, 553 P.2d 8, 16 (Alaska 1976). The court will look to the point in time at which the defendants' actions indicated that their conduct was irrevocable and "would have galvanized a reasonable

---

**11.** The facts of *Richardson* are very similar to the case before us. In *Richardson,* a driveway across the servient estate was used by the owners of the dominant estate since the inception of the dominant estate. The driveway was in existence and being used by the tenants on the dominant estate when the owners of the servient estate were assigned their lease to the

land. Originally, the driveway was the only access to the dominant estate. 548 P.2d at 1372.

**12.** We have held before that in some cases the landowner's intent to permit or acquiesce to the use of an easement was the dispositive determination. *See Swift,* 706 P.2d at 304.

plaintiff into seeking a lawyer." *Breck*, 706 P.2d at 316. The analysis is actually less of a distinct two-part test than an overall balancing of the equities. *Id.* at 316 n. 14.

 Both parties testified that Gust Wahl confronted David McGill in August 1989 and asked him to clear the roadway. The testimony also showed that David McGill told Gust Wahl that the roadway would not be opened. Both Wahl and McGill suggested that the issue would have to be resolved in court. David McGill enlisted an attorney in anticipation of litigation. Gust Wahl sought advice from the same attorney, but was informed that he was representing the McGills. The Wahls then hired their present attorney, but did not file their complaint until April 1990, ten months after the Wahls were admittedly "galvanized into seeking a lawyer." Gust Wahl testified that the delay was caused by his lack of funds to pursue the lawsuit.

In *Breck*, we held that under the circumstances an eight month delay was inexcusable and resulted in undue prejudice to the defendant. The action was barred by laches. *Id.* at 317. This case is similar to *Breck* in two respects. First, in *Breck*, the trial court found that the defendants, the City and Borough of Juneau, were on notice of Breck's allegations because Breck had expressed her concerns before the assembly at least nine times. *Id.* (Burke, J. dissenting). Second, we rejected the proposition that an otherwise unreasonable delay was always excusable because of the plaintiff's lack of funds or legal resources to pursue the claim. *Id.* at 316 & n. 13.

However, we conclude that the balance of the equities favors an affirmance of the trial court. Although the source of prejudice identified in *Breck*, and alleged in this case was the partial completion of a construction project, *Id.* at 316, the actual prejudice was not the same. The ten month delay did not significantly prejudice David McGill. McGill testified that he placed the house so as to intentionally block the road and settle the issue. Thus, when he did the original work he was aware that the house might have to be removed. The prejudice

from the delay, therefore, can only be the resources spent working on the house during the delay. Although McGill did complete some work on the house in that time it was far from being completed. McGill testified that the house would take two to three years to build. There was also testimony that the house was movable.

These circumstances distinguish this case from *Breck*. David McGill should not be allowed to assert the defense of laches when he pursued a course of conduct which he knew from the beginning was likely to arouse litigation.

### D. ATTORNEY'S FEES

 The McGills were not given an opportunity to file a motion opposing the award of attorney's fees requested by the Wahls. Alaska Civil Rule 82(a), as it read when the judgment was entered, did not require that a motion for attorney's fees be submitted within a given time period in order for fees to be awarded. Alaska R.Civ.P. 82(a) (1990–91), *amended by*, Alaska Supreme Court Order No. 1066 (effective July 15, 1991). However, the absence of that provision does not mean that a motion need not be made or that the opposing party should not be given an opportunity to respond. According to Civil Rule 77(c), the McGills should have been allowed ten days to submit an opposition to a motion filed against their interest.

 On remand, the trial court should consider the complexity of the factual and legal issues presented, the length of trial and the amount of preparation necessary for trial in seeking the percentage of reasonable actual fees to be recovered. *See, e.g., Miller v. LHKM*, 751 P.2d 1356, 1362 (Alaska 1988) (approving of consideration of noncomplexity of the issues and brief duration of the case in awarding a low percentage of actual costs); *Moses v. McGarvey*, 614 P.2d 1363, 1370 (Alaska 1980) ("We recognize that complexity may be considered in determining the amount to be awarded, but that factor alone does not justify the award of full fees.").

## III. CONCLUSION

The decision of the trial court granting the injunction is AFFIRMED. The trial court's award of attorney's fees is REVERSED and REMANDED for reconsideration.

## APPENDIX 1