Denise McDONALD, Appellant,

v.

Sylvia HARRIS, Appellee.

No. S–8197.

Supreme Court of Alaska.

April 9, 1999.

**82**

Keith A. Christenson, Eagle River, for Appellant.

Virginia Espenshade, Homer, for Appellee.

Before: MATTHEWS, Chief Justice, EASTAUGH, FABE, and BRYNER, Justices.

*OPINION*

FABE, Justice.

## I. *INTRODUCTION*

When Denise McDonald discovered that Sylvia Harris's driveway encroached on McDonald's property, McDonald blocked Harris's use of the driveway. As a result, Harris sought a prescriptive easement, and the superior court found that Harris met the three requirements of a prescriptive easement—continuity, hostility, and notoriety—for the required period of ten years. On appeal, McDonald argues that the trial court used the wrong dates for determining the required period of continuity and that both McDonald's and Harris's lack of knowledge of the encroachment negated the hostility and notoriety elements. Because we conclude that the superior court correctly determined that Harris satisfied the requirements for a prescriptive easement, we affirm.

## II. *FACTS AND PROCEEDINGS*

Sylvia Harris and Denise McDonald own adjacent lots of real property in Mountain Glacier Estates about fifteen miles east of Homer. David Truss previously owned a larger parcel that included both the Harris and McDonald lots, as well as a gravel pit. Truss sold the lot now owned by McDonald to a predecessor in title in 1978.

The Harrises bought their lot from Truss in November 1982.[1] The bill of sale, recorded in February 1983, did not reserve an easement to Truss; it only provided that the Harrises would pay the $30,000 purchase price by performing construction work for the gravel pit on Truss's property. The Harrises then selected the exact site for their log home on the lot in late 1982 or early 1983.

Although Donald Harris did not complete construction of the log home until October 1985, he built a driveway to the property in the spring of 1983. Donald then erected a barbed wire fence on the side of the driveway that was thought to abut the lot later purchased by Denise McDonald. The Harrises have maintained and used the driveway year-round from 1983 to the present. In addition to posting "no trespassing" and "private drive" signs, Donald put logs across the access road behind the house in approximately 1986 to block public traffic.

While Donald and his workers occasionally used the driveway as a way to access the gravel pit when doing construction work for Truss, the public did not generally use the driveway. For the three months out of the year that the gravel pit was in use, alternative routes existed to access the pit. In fact, Donald had supervised the construction of Mossberry Avenue in 1985, which was intended to provide alternate access to the gravel pit.

When Denise McDonald bought her property in April 1986, she did not have a survey performed; instead, she relied on a rough sketch of the property that did not correctly identify its boundaries. When, approximately nine and a half years later, she commis-

---

1. The original bill of sale technically conveyed the property only to Donald Harris. However, in October 1986, Donald Harris executed a statuto- ry warranty deed, conveying the property to himself and Sylvia as tenants by the entirety.

sioned a formal site survey, she discovered that the Harris driveway encroached on her property. She then blocked the driveway.

Because of the disputed driveway, Harris sought a prescriptive easement. After a bench trial on the matter, Superior Court Judge Harold Brown awarded the prescriptive easement to Harris. McDonald appeals.

## III. DISCUSSION

■ Harris claims a prescriptive easement for the portion of the driveway that encroaches onto the McDonald property. The elements of a prescriptive easement are essentially the same as the elements of adverse possession,[2] except that adverse possession focuses on possession rather than use.[3] To be entitled to a prescriptive easement, a party must prove (1) *continuity*— that the use of the easement was continuous and uninterrupted; (2) *hostility*—that the user acted as the owner and not merely one with the permission of the owner; and (3) *notoriety*—that the use was reasonably visible to the record owner.[4] A claimant must prove each element by clear and convincing evidence.[5] Finally, a claimant must have engaged in the adverse use for at least ten years.[6]

### A. Standard of Review

■ The question of whether a claimant has satisfied the elements of a prescriptive easement is factual in nature.[7] We will overturn such factual findings "only if they are clearly erroneous and there exists a definite and firm conviction that a mistake has been made."[8]

### B. Harris Has Proved the Elements of a Prescriptive Easement.

### 1. Continuity

■ To meet the requirement of continuity, Harris must show continuous and uninterrupted use for at least ten years prior to December 1995, when McDonald interrupted the adverse use of the encroachment. We explained this concept, in the context of adverse possession, in *Alaska National Bank v. Linck:*[9]

> The nature of [possession or use] sufficient to meet this requirement depends on the character of the property. One test is whether the adverse possessor has used and enjoyed the land as "an average owner of similar property would use and enjoy it." An interruption of possession caused by the record owner or third parties, or abandonment by the possessor, tolls the running of the statute of limitations.[10]

We have applied this test in determining the existence of prescriptive easements as well.[11] To establish interruption of use, the record owner or third party must usually do more than merely post signs against trespassing; the owner or party ordinarily needs to physically block access to the easement.[12]

The superior court found that the commencement date for the required period of adverse use was in early or mid 1983, when Donald Harris built the driveway to the building site of his new home. But because Truss and others used this driveway as an access to Truss's gravel pit, McDonald argues that the Harrises' use was not exclusive and thus cannot be characterized as continuous and uninterrupted from the time of the

2. *See McGill v. Wahl,* 839 P.2d 393, 397 (Alaska 1992); *Swift v. Kniffen,* 706 P.2d 296, 302 (Alaska 1985).

3. *See McGill,* 839 P.2d at 397 n. 8.

4. *See id.* at 397; *Swift,* 706 P.2d at 303–04.

5. *See Swift,* 706 P.2d at 302.

6. *See* AS 09.10.030.

7. *See McGill,* 839 P.2d at 397 n. 10; *Swift,* 706 P.2d at 303.

8. *McGill,* 839 P.2d at 397 n. 10.

9. 559 P.2d 1049 (Alaska 1977).

10. *Id.* at 1052 (citations omitted).

11. *See Swift,* 706 P.2d at 303 (quoting *Linck,* 559 P.2d at 1052).

12. *See id.*

driveway's construction. McDonald maintains that the Harrises' easement rights did not begin to accrue until Donald physically blocked Truss's access to the gravel pit in 1986.[13]

While McDonald acknowledges our holding in *McGill v. Wahl*[14] that "[e]xclusivity of use is not generally a requirement for a prescriptive easement,"[15] she relies on *McGill* for her argument that exclusivity of use should be considered as "a factor in determining whether a use was under a claim of right."[16] In that case, the claimant and other adjacent lot owners had continuously used a roadway through the record owner's adjacent property as an access to their lots.[17] The roadway existed before the owner of the adjacent property had come to the property,[18] and it was the sole automobile access to the claimant's house.[19] The other adjacent lot owners eventually used a newly constructed highway to access their properties, but the claimant continued to use the disputed road.[20] We rejected the suggestion that nonexclusive use of the road precluded a prescriptive easement.[21]

■ Here, both Harris and Truss used the driveway as an access to their properties. Like the roadway in *McGill*, the disputed driveway existed before McDonald purchased her property. While the other lot owners in *McGill* had ceased their use of the roadway, Truss may have continued to use the drive-way as access to the gravel pit. Still, as long as the Harrises were the "primary and only consistent users of the [driveway],"[22] a third party's occasional use of the driveway will not defeat the Harrises' claim for easement rights based on their use of the driveway as private access.

In accordance with this view, the trial court found that the Harrises maintained and continuously used the driveway throughout each year beginning in early or mid 1983 to the present. The Harrises built the driveway in its present location soon after they began living on the property. The Harrises continued to use the driveway as private access to their homesite, and later their completed home, until McDonald blocked that access in 1995. The trial court's finding that the requisite ten years of continuous use had elapsed before McDonald interrupted the adverse use was thus not clearly erroneous.

### 2. *Hostility*

■ McDonald contends that the element of hostility requires that the claimant of an easement have some knowledge that her use is in derogation of another's rights. The hostility requirement, however, is "determined by application of an *objective* test which simply asks whether the possessor acted toward the land as if he owned it, without the permission of one with legal authority to give possession."[23]

---

13. McDonald also argues that the required period did not start running until 1989 because Harris had only furnished prospective consideration and could not be the vested owner until the statute allowing an action by Truss for breach of contract had run. But

[w]e will not consider new arguments on appeal which were neither raised below nor included in the points on appeal unless the new issues either establish plain error or 1) do not depend on new or controverted facts; 2) are closely related to the appellant's arguments at trial; and 3) could have been gleaned from the pleadings.

*Broeckel v. State, Dep't of Corrections*, 941 P.2d 893, 897 (Alaska 1997) (quoting *Arnett v. Baskous*, 856 P.2d 790, 791 n. 1 (Alaska 1993)). McDonald did not raise this argument below, nor did she include it in her points on appeal. And none of the exceptions apply here.

14. 839 P.2d 393 (Alaska 1992).

15. *Id.* at 398.

16. *Id.*

17. *See id.* at 398.

18. *See id.*

19. *See id.* at 395.

20. *See id.* at 398.

21. *See id.*

22. *Id.*

23. *Nome 2000 v. Fagerstrom*, 799 P.2d 304, 310 (Alaska 1990) (citation and internal quotation marks omitted).

Still, we will presume that the use of land by an alleged easement holder was permissive unless a claimant proves "a distinct and positive assertion of a right hostile to the owner."[24] But this presumption does not arise if "a roadway was not established by the owner of the servient estate for its own use but was for many years the only means of passage to the dominant estate."[25]

Here, the general presumption of permission does not arise. McDonald did not construct the driveway nor did she use it; the driveway existed when she first bought the property and there is no indication that her predecessors in title built or used the driveway. Moreover, the driveway was the only viable means of passage to the actual site of the Harris home. Thus, this case qualifies as an exception to the general presumption.

Even if the presumption did arise, Harris's actions objectively asserted a right hostile to McDonald's. A claimant's use is adverse or hostile "if the true owners merely acquiesce, and do not intend to permit a use."[26] The key difference between acquiescence and permission is that "a permissive use requires the acknowledgment by the possessor that he holds in subordination to the owner's title."[27]

█ As McDonald admits, neither she nor Harris had any knowledge of the encroachment of the driveway. Therefore, McDonald could not have intended to permit the Harrises to use that portion of the driveway. Moreover, because the Harrises had no knowledge of the encroachment, they could not have acknowledged that McDonald was the rightful owner of that portion. In fact, the Harrises used and maintained the driveway as if it were their own. Thus, the superior court correctly found that the Harrises met the requirement of hostility.

### 3. Notoriety

█ Finally, McDonald argues that although the disputed driveway was visible, the lack of actual knowledge by any party of the encroachment defeats the prerequisite of notoriety. But this claim is not supported by our case law. To the contrary, the adverse user need not demonstrate that the record owner had actual knowledge of the adverse party's presence.[28] The adverse user must show only that a duly alert owner would have known of the adverse presence.[29] In particular, "a landowner is responsible for knowing the physical encumbrances on and the boundaries of the owner's land."[30] Harris thus only needs to show that her continued use of the driveway was open, not that the use was open and known by McDonald to be on her land.[31]

The superior court found that McDonald, as a duly alert and reasonably diligent owner, should have known that a portion of the Harrises' driveway encroached on her property. McDonald observed the driveway when she bought her property and knew that the Harrises and their invitees used it. At the time of her purchase, McDonald had walked the corners of the property and saw no visible stakes. Instead of ordering an actual survey of the property, however, "she relied on a drawing that was undated, unsigned and failed to identify which way is north as assurance that the driveway did not encumber her property." Because McDonald bore the responsibility of knowing the boundaries of her property, we uphold the superior court's finding on the element of notoriety.

**24.** *McGill*, 839 P.2d at 397 (quoting *Dillingham Commercial Co. v. City of Dillingham*, 705 P.2d 410, 417 (Alaska 1985)); *see also Tenala, Ltd. v. Fowler*, 921 P.2d 1114, 1120 (Alaska 1996).

**25.** *McGill*, 839 P.2d at 397–98.

**26.** *Tenala*, 921 P.2d at 1120; *see also Swift v. Kniffen*, 706 P.2d 296, 304 (Alaska 1985).

**27.** *Tenala*, 921 P.2d at 1120 (quoting *Hubbard v. Curtiss*, 684 P.2d 842, 848 (Alaska 1984)).

**28.** *See Swift,* 706 P.2d at 304.

**29.** *See id.*

**30.** *Weidner v. State, Dep't of Transp. & Pub. Facilities*, 860 P.2d 1205, 1209–10 (Alaska 1993).

**31.** *See id.* at 1210.

## IV. CONCLUSION

Because the superior court's findings are not clearly erroneous, we AFFIRM its decision to grant Harris a prescriptive easement.

CARPENETI, Justice, not participating.