Robert J. RIDDELL, Appellant,

v.

Irvin H. EDWARDS, Appellee.

No. S–9326.

Supreme Court of Alaska.

Oct. 5, 2001.

---

Robert J. Riddell, pro se, Ward Cove.

Bryan T. Schulz, Holman & Schulz, Ketchikan, for Appellee (no brief filed).

Before FABE, Chief Justice, and MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

After Lillie M. Rahm–Riddell passed away in September 1997, her brother, Irvin H. Edwards, and her husband, Robert J. Riddell, filed competing requests to probate wills that Lillie had executed in 1992 and 1997. The 1992 will left most of Lillie's estate to Edwards; the 1997 will left almost everything to Riddell. After a bench trial, Superior Court Judge Larry R. Weeks declared the 1997 will invalid, concluding that Lillie was incompetent when she executed it and that she acted under Riddell's undue influence. Finding that the 1992 will was valid, Judge Weeks admitted it to probate. Riddell appeals, challenging these findings and arguing that he was entitled to a jury trial. We affirm, holding that Riddell had no statutory or constitutional right to a jury trial in a probate proceeding and that the superior court did not clearly err in finding Lillie's 1997 will invalid for lack of testamentary capacity.

## II. *FACTS AND PROCEEDINGS*

Lillie N. Rahm–Riddell was a long-time resident of Ketchikan. Lillie met Robert Riddell in December 1993, when she was in her early nineties and Riddell was in his mid-sixties. Riddell began working as Lillie's handyman, performing odd-jobs around her house. · Their relationship quickly developed, and within months of their meeting, Riddell and Lillie began living together in Lillie's home and at a cabin in Eagle Creek. Although Riddell provided companionship and assistance to Lillie, her friends came to believe that he discouraged independent communication with Lillie. Further, they often felt uncomfortable around Riddell because he was rude and abusive toward them.

In April 1995 Lillie revoked a power of attorney that gave her daughter, Anita May Zugoff, access to her funds. Lillie also transferred money from an Alaska Federal Savings & Loan account to three separate accounts at Bank of America. Riddell had access to all information concerning her new bank accounts. When Edwards attempted to discuss these transfers with Lillie, Riddell intervened and would not allow him to talk to Lillie; according to Edwards, Lillie seemed confused about the monetary transfers.

These actions led Zugoff to petition for appointment of a conservator on April 27, 1995. While the conservatorship proceeding was pending, Riddell married Lillie in a ceremony performed in Ketchikan on May 1, 1995. In January 1996 Superior Court Judge Thomas M. Jahnke appointed the Public Guardian as Lillie's primary conservator.

Several months later, a court-appointed attorney filed a domestic violence petition against Riddell on Lillie's behalf. The petition was prompted by reports that Lillie, the Public Guardian, Lillie's part-time care taker, her hospital, and attorneys involved in her case had been subjected to physical attacks or verbal threats by Riddell. After a hearing, Superior Court Judge Patricia A. Collins granted the petition, finding that Riddell had abused Lillie and enjoining Riddell from contact with her. The Office of Public Advocacy subsequently arranged for Lillie to be placed in an assisted living home in Washington. She lived there until Riddell located her;

Riddell removed Lillie from the home and moved her to Oregon. He refused to reveal Lillie's location, even after the superior court expressly ordered him to do so. Lillie died September 4, 1997, in Springfield, Oregon.

Lillie executed three different wills in the five years preceding her death. Lillie's attorney, Richard Whittaker, prepared the first will, which Lillie executed on August 14, 1992. The 1992 will left Lillie's brother, Edwards, an undivided one-half of her estate; it left her daughter, Zugoff, an undivided one-quarter of her estate; and it left two grandchildren undivided eighths of her estate.

Lillie signed a second will on June 3, 1994. According to Riddell, he prepared the 1994 will at Lillie's request. This will nominated Riddell as Lillie's personal representative and left him her "home and property . . . and all the furniture, appliances, pictures, tools and whatever is deemed necessary and needed for his confortable [sic] living in my home." It gave Edwards an undivided three-fourths of any monies remaining after payment of claims against the estate and costs of administration, while leaving Riddell the remaining one-fourth of the monies. Zugoff received nothing but Lillie's station wagon.

On January 29, 1997, almost eight months before she died, Lillie executed a will in Springfield, Oregon. This will left her entire estate to Riddell and expressly disinherited her brother, daughter, and grandchildren. Riddell also prepared this will.

Two months after Lillie's death, on November 10, 1997, Edwards filed an application for informal probate of Lillie's 1992 will and requested appointment as personal representative. In February 1998 Riddell filed an application for informal probate of Lillie's 1997 will, asking to be appointed as personal representative. No one requested probate of the 1994 will.

Riddell moved to dismiss Edwards's probate application, arguing that Lillie's 1997 will revoked her 1992 will. Edwards opposed the motion, challenging the 1997 will as invalid due to Lillie's lack of testamentary capacity and Riddell's undue influence.

Judge Weeks denied Riddell's motion to dismiss, finding triable issues of fact concerning the validity of the 1997 will. Riddell demanded a jury trial; Judge Weeks denied this motion and proceeded to hold a bench trial on the competing requests for probate.

Upon conclusion of the trial, Judge Weeks issued a memorandum decision finding that the 1997 will was invalid due to lack of testamentary capacity and the presence of undue influence. Finding that Edwards had established that the 1992 will was properly executed, Judge Weeks admitted the will to probate and appointed Edwards personal representative.

Riddell filed this appeal.

## III. DISCUSSION

### A. Riddell Was Not Entitled To a Jury Trial.

■ Riddell contends that the superior court erred in denying his motions for a jury trial. This claim raises a question of law that we review de novo.[1] In denying Riddell's demand for a jury trial, Judge Weeks determined that, because probate matters are generally equitable in nature, no right to a jury trial ordinarily exists in a probate case unless expressly authorized by statute.[2] Judge Weeks relied on McGill v. Wahl for the proposition that "[t]he Alaska Constitution

preserves a jury trial only for those causes of action which are legal, and not equitable in nature."[3] In that case, we concluded that, because the McGills' claim for a prescriptive easement was "in the nature of an equitable claim and was historically tried in the courts of equity," the McGills were not entitled to a jury trial.[4]

Riddell nonetheless cites Alaska Probate Rule 11,[5] AS 13.06.085,[6] and In re Estate of McCoy,[7] claiming that these authorities "show[ ] that Jury Trials in probate cases are allowed in the State of Alaska, therefore, [Riddell] was and is entitled to a jury trial." But Riddell misinterprets these authorities.

Alaska Statute 13.06.085(a) only entitles a party in a probate case to a jury trial when "any controverted question of fact arises as to which any party has a constitutional right to trial by jury." Article I, section 16 of the Alaska Constitution, guarantees parties the right to a jury trial only to the extent that the right existed at common law: "In civil cases where the amount in controversy exceeds two hundred fifty dollars, the right of trial by a jury of twelve is preserved to the same extent as it existed at common law." Riddell was thus entitled to a jury trial under AS 13.06.085(a) only to the extent that the common law preserved such a right as to the facts at issue in this case.

1. Cf. McGill v. Wahl, 839 P.2d 393, 396 (Alaska 1992).

2. Focusing on a sentence in the superior court's written decision that states "[t]he Alaska Supreme Court has said there is right to a jury trial in equity cases in this state," Riddell claims that the superior court engaged in "deceitfulness, bias, prejudice, and contempt" by denying him a jury trial. In context, however, it is obvious that the superior court simply committed a clerical error by omitting the word "no" between the words "is" and "right" in its written decision. As we explain in the text, our prior cases make it clear that there is no right to a jury trial in cases of equity.

3. McGill, 839 P.2d at 396; see also Alaska Const. art. I, § 16.

4. McGill, 839 P.2d at 396.

5. Probate Rule 11 provides:
A demand for jury trial pursuant to AS 13.06.085 is governed by Civil Rules 38 and

39, except that the demand must be served no later than 20 days after service of the first pleading directed to a triable issue or five days before the scheduled hearing, whichever is earlier. The first pleading in a creditor's claim is the petition for allowance. The demand for jury trial must specify the issues to be tried by jury and the legal basis supporting the right to jury trial on those issues.

6. AS 13.06.085 provides:

(a) If duly demanded, a party is entitled to trial by jury in any proceeding in which any controverted question of fact arises as to which any party has a constitutional right to trial by jury.
(b) If there is no right to trial by jury under (a) of this section or the right is waived, the court in its discretion may call a jury to decide any issue of fact, in which case the verdict is advisory only.

7. 844 P.2d 1131 (Alaska 1993).

■ Here, as the superior court correctly recognized, will contests are "unknown to the common law" and exist only as permitted by statute.[8]  As the court also correctly recognized, because probate matters are equitable, and because no constitutional right to a jury trial exists in matters of equity,[9] the Alaska Constitution does not guarantee jury trials in will contest cases.  Riddell cites no statute creating a right to jury trial in such cases, and we are aware of none.[10]  Therefore, we affirm the trial court's denial of Riddell's motion for a jury trial.

B. *The Superior Court Did Not Clearly Err in Declaring the 1997 Will Invalid.*

■ Riddell next contends that the superior court erred in declaring the 1997 will invalid and in admitting the 1992 will to probate.  When decisions of "testamentary capacity depend[ ] largely, if not entirely, on oral testimony given by witnesses seen and heard by the trial judge, [it is the superior court's] province to judge their credibility, and we may not reverse [its] decision unless we find it to be clearly erroneous."[11]  The superior court's factual findings are clearly erroneous only "if we are left with 'a definite and firm conviction on the entire record that a mistake has been made, although there may be evidence to support the finding.' " " [12] We review all evidence in the light most favorable to the party prevailing below."[13]

Riddell opposed Edwards's petition for probate of the 1992 will, alleging that the 1997 will was properly executed and that it revoked the 1992 will.  Under AS 13.16.170 the "[p]roponents of a will have the burden of establishing prima facie proof of due execution in all cases, and if they are also petitioners, prima facie proof of death and venue."  The statute further provides that "[c]ontestants of a will have the burden of establishing ... revocation." [14]  Judge Weeks found that the 1992 "will was proved up at this trial and Mr. Whittaker testified [Lillie] was competent at the time.  No one contradicted that testimony."

■ Riddell does not specifically challenge this finding.  He contends that the 1997 will revoked the 1992 will.[15]  In Alaska a will may be revoked by a physical act of revocation or by execution of a subsequent will that revokes the previous will either expressly or by inconsistency.[16]  Under Alaska law, marriage does not revoke a pre-existing will.[17]  It follows that Riddell could

8.  80 Am.Jur.2d *Wills* § 1026 (1975); *see also* 47 Am.Jur.2d *Jury* § 51 (1995); 3 William J. Bowe & Douglas H. Parker, *Page on the Law of Wills* § 26.85 (rev. ed.  1961) ("[N]o constitutional right exists to a trial by jury in a proceeding to probate or contest a will.").

9.  *See McGill v. Wahl,* 839 P.2d 393, 396 (Alaska 1992).

10.  Although Probate Rule 11 evidently contemplates a jury trial in some probate cases, since it describes how the right should be implemented, *see* supra, note 5, the rule's provisions do not support Riddell's position.  Probate cases are not confined to will contests, but often involve creditors' claims, which raise contract issues that traditionally are matters at law and, as such, are triable before juries.  Probate Rule 11, which expressly refers to "a creditor's claim," appears to address these situations.

11.  *In re Estate of Kraft,* 374 P.2d 413, 416 (Alaska 1962); *see also* Alaska R. Civ. P. 52(a); *Paskvan v. Mesich,* 455 P.2d 229, 232 (Alaska 1969).

12.  *In re Estate of Kottke,* 6 P.3d 243, 245 (Alaska 2000) (quoting *Mathis v. Meyeres,* 574 P.2d 447,

449 (Alaska 1978)); *see also Paskvan,* 455 P.2d at 232, 240.

13.  *See Kottke,* 6 P.3d at 245 (citing *Mathis,* 574 P.2d at 449).

14.  AS 13.16.170.

15.  Riddell separately maintains that, even if the 1997 will is invalid, the 1994 will independently revoked the 1992 will; according to Riddell, then, the court should have admitted the 1994 will instead of the 1992 will.  But Riddell never applied to admit the 1994 will to probate or argued that it had priority over the 1992 will.  Accordingly, we deem this argument to be waived.  *See Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985) ("As a general rule, a party may not present new issues or advance new theories to secure reversal of a lower court decision.").

16.  *See* AS 13.12.507.

17.  Alaska Statute 13.12.301(a) provides that a testator's surviving spouse, who married the testator after the testator executed a will,

is entitled to receive, as an intestate share, no less than the value of the share of the estate the

prevail only by establishing the validity of the 1997 will, which expressly revoked Lillie's prior wills. Here, even though the 1997 will appeared to be correctly executed, it was open to challenge on grounds of testamentary capacity, fraud, or undue influence.[18] The trial court found lack of testamentary capacity and undue influence.

Judge Weeks determined that Lillie lacked the requisite testamentary capacity to execute her 1997 will under the standard set out in *Paskvan v. Mesich:*

> Disease, great weakness, the use of alcohol and drugs, and approaching death do not alone render a testator incompetent to make a will. The question is always whether, in spite of these things, [a testator] had sufficient mental capacity to understand the nature and extent of [her] property, the natural or proper objects of [her] bounty, and the nature of [her] testamentary act.[19]

To meet this standard, Lillie had to have testamentary capacity at the time she executed her 1997 will.[20] As we recently said in *In re Estate of Kottke,* "a deficiency on any one of the three elements [of testamentary capacity] invalidates the will." [21]

Based on the evidence presented at trial, Judge Weeks determined that Lillie was incompetent at the time she executed her 1997 will. He found that Lillie "suffered from Alzheimer's disease and/or senile dementia from 1993 until her death. She undoubtedly confabulated when she was forgetful and was very forgetful. She would make up stories to cover her forgetfulness and those stories would often result in erroneous and inaccurate information being transmitted." [22] This finding is supported by testimony from at least four doctors who all agreed that Lillie suffered from dementia, Alzheimer's disease, or both. Further, in both March and November of 1995, two of these doctors determined that Lillie was incompetent to manage her financial affairs. Indeed, all witnesses at trial except Riddell and his relatives believed that Lillie was incompetent to manage her affairs. Dr. Lasse, a court-appointed psychologist, even noted that Lillie was confused about her relationship with Riddell.[23]

Judge Weeks also considered Superior Court Judge Thomas M. Jahnke's earlier memorandum and order regarding Lillie's conservatorship, which appointed a public guardian to act as Lillie's conservator on January 30, 1996.[24] Judge Jahnke's order

---

surviving spouse would have received if the testator had died intestate as to that portion of the testator's estate, if any, that neither is devised to a child of the testator who was born before the testator married the surviving spouse and who is not a child of the surviving spouse nor is devised to a descendant of such a child or passes under AS 13.12.603 or 13.12.604 to such a child or to a descendant of such a child, unless

(1) it appears from the will or other evidence that the will was made in contemplation of the testator's marriage to the surviving spouse;

(2) the will expresses the intention that it is to be effective notwithstanding a subsequent marriage; or

(3) the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by the testator's statements or is reasonably inferred from the amount of the transfer or other evidence.

Moreover, in conformity with the Uniform Probate Code, AS 13.12.508 states that "[e]xcept as provided in AS 13.12.803 [effect of testator's homicide by beneficiary] and 13.12.804 [revocation of probate and nonprobate transfers by divorce], a change of circumstances does not revoke a will or a part of it." *See also* Uniform

Probate Code § 2–508 (1993). Therefore, although marriage is a change in circumstances, it does not revoke a pre-existing will.

18. *See* 95 C.J.S. *Wills* § 274(d)(1) (1957); 2 William J. Bowe & Douglas H. Parker, *Page on the Law of Wills* § 21.27 (rev. ed.1960).

19. *Paskvan,* 455 P.2d at 234 (quoting *In re Estate of Kraft,* 374 P.2d 413, 416 (Alaska 1962)).

20. *See* 1 William J. Bowe & Douglas H. Parker, *Page on the Law of Wills* § 12.2 (rev. ed.1960).

21. 6 P.3d 243, 246 (Alaska 2000).

22. Alzheimer's disease is a progressive, degenerative condition.

23. Lillie once stated that "[Riddell has] been my right hand man, and now he's mine;" but on another occasion she stated that "[Riddell is] not my husband; he's a boarder."

24. That proceeding was limited to the appointment of a conservator for Lillie, but Judge Jahnke noted that there is "substantial overlap in the issues that must be addressed by a court in

stated that "[a]t numerous points in her conversation with the court, [Lillie] was utterly confused about the status of people in her life and about her own capabilities." [25]

■ Our review of the record convinces us that Judge Weeks's finding of testamentary incapacity is supported by substantial evidence and is not clearly erroneous. Indeed, overwhelming evidence suggests that Lillie was incompetent and did not understand the extent of her estate or the status of her personal relationships. Thus, we affirm the superior court's decision invalidating the 1997 will. Because Lillie's 1997 will was invalid, and Riddell did not otherwise challenge the validity of the 1992 will, we also affirm the superior court's order admitting the 1992 will to probate.[26]

## IV. CONCLUSION

We AFFIRM the superior court's decision.

---

evaluating one's competency to manage one's financial affairs and one's competency to assent to a marriage and make a will"; examples include testamentary capacity and undue influence.

25. Judge Jahnke's earlier findings are significant. Although we recognized in *Paskvan v. Mesich* that a finding of incompetency in a guardianship proceeding does not necessarily determine the issue of testamentary capacity, we further held that the finding in the guardianship proceeding is "evidence to be considered, along with other evidence, on the issue of testamentary capacity." 455 P.2d at 238–39 (internal citations omitted); *see also* 2 William J. Bowe & Douglas H. Parker, *Page on the Law of Wills* § 21.27 (rev. ed.1961). Judge Weeks recognized that there may be "instances when a person is incompetent followed by other times when a person may be competent

and that sequence may continue for many years." But the judge expressly concluded that Lillie "did not know the extent of her property at the time of the last will in January 1997."

26. The trial court independently found the 1997 will invalid on the ground of undue influence. A finding of undue influence presupposes the existence of testamentary capacity. *See* 1 William J. Bowe & Douglas H. Parker, *Page on the Law of Wills* § 15.4 (1960) ("Undue influence is said to presuppose mental capacity, and to require it as essential to the existence of undue influence. This is true as far as the absence of mental capacity renders the will invalid, and makes any inquiry into undue influence unnecessary."). Our decision affirming the finding that Lillie lacked testamentary capacity makes it unnecessary to address the court's added finding of undue influence.