*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JAY YUK and HEE SU YUK, ) | |
| ) | Supreme Court No. S-16242 |
| Appellants, ) | |
| ) | Superior Court No. 3AN-15-08659 CI |
| v. ) | |
| ) | O P I N I O N |
| SIDNEY L. ROBERTSON SR. and ) | |
| THERESA A. ROBERTSON, ) | No. 7174 – May 26, 2017 |
| ) | |
| Appellees. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: John C. Pharr, Law Offices of John C. Pharr, P.C., Anchorage, for Appellants. J. E. Wiederholt, Aglietti, Offret & Woofter, Anchorage, for Appellees.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

WINFREE, Justice.

## I.  INTRODUCTION

After a surveyor discovered a discrepancy between the location of a longstanding fence and the boundary between two lots, property owners sued to quiet title to the fenced-off section of their lot. But the owners of the encroaching fence claimed adverse possession of the fenced-off section, and the superior court entered summary judgment in their favor. The property owners who brought the quiet title

action appeal, arguing that the court erred in its application of procedural rules and substantive law. Seeing no error, we affirm the superior court's decision.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

A fence between Lots 3 and 4 of A-B-K Commercial Subdivision No. 3 in Anchorage does not follow the platted boundary line, effectively placing a 6-foot by 300-foot portion of Lot 4 (the disputed property) on Lot 3's side of the fence. The lots were platted in 1967. A municipal sewer easement recorded in 1969 for the "West 10 feet of Lot 4" wholly encompasses the disputed property. The sewer line was built later that year, and the parties agree that the municipal easement still exists.

A 1969 aerial photograph of the area shows no fence or building on either lot, but the fence appears in its current location in a similar 1979 photograph. Before Sidney and Theresa Robertson purchased Lot 3 in 1991, Sidney's parents owned it and used it for a daycare. The Robertsons bought Lot 3 and the daycare "as a turn-key operation" and have continued operating it since. Both they and their predecessors used the disputed property for the daycare's playground equipment.

Jay and Hee Su Yuk purchased Lot 4 in 2010; they then commissioned a property survey that documented a discrepancy between the fence and the boundary line. In 2011 the Yuks demanded that the Robertsons move the fence to the correct boundary; the Robertsons refused, claiming they owned the disputed property through adverse possession. The Yuks repeated their demand in 2015, but the Robertsons again refused. The Yuks then sued to quiet title to the disputed property.

### B.    Proceedings

In answer to the Yuks' quiet title complaint, the Robertsons asserted adverse possession as an affirmative defense. They moved for summary judgment, claiming that they had acquired title to the disputed property. The Yuks, in an opposition

and cross motion for summary judgment, claimed that the Robertsons should have raised adverse possession as a counterclaim and that the Robertsons failed to satisfy the adverse possession requirements.

Before the summary judgment hearing the superior court ordered the parties to read its recent order in *Ibarra v. Daugherty*[1] — an unrelated case in which the court had found adverse possession of a parcel enclosed by an encroaching fence — and to be prepared to discuss it at the hearing. After the hearing the court granted the Robertsons' summary judgment motion and denied the Yuks'. The court observed in a footnote that the Yuks had failed to distinguish the facts and ruling of *Ibarra*. Determining that the Robertsons proved by clear and convincing evidence that they had satisfied the elements of adverse possession, the court recognized their ownership of the disputed property.

The Yuks appeal.

## III.   STANDARD OF REVIEW

"We review grants of summary judgment de novo, exercising our independent judgment to determine whether the parties genuinely dispute any material facts and, if not, whether the undisputed facts entitle the moving party to judgment as a matter of law."[2] Under the independent judgment standard, we adopt "the rule of law that is most persuasive in light of precedent, reason, and policy."[3] "We review de novo

---

[1]    No. 3AN-11-10737 CI (Alaska Super., June 21, 2012).

[2]    *DeVilbiss v. Matanuska-Susitna Borough*, 356 P.3d 290, 293 (Alaska 2015) (quoting *Price v. Kenai Peninsula Borough*, 331 P.3d 356, 358-59 (Alaska 2014)).

[3]    *Id.* at 294 (quoting *Young v. Embley*, 143 P.3d 936, 939 (Alaska 2006)).

a superior court's interpretation of court rules . . . ."[4]  We also review de novo "whether an evidentiary presumption was correctly applied."[5]

## IV.  DISCUSSION

The Yuks make two procedural claims involving the superior court's application of court rules.  The Yuks also dispute the superior court's determination that the Robertsons satisfied the elements of adverse possession.  We affirm the superior court's decision in all respects.

### A.  Procedural Claims

The superior court recognized the Robertsons' title to the disputed property notwithstanding the Yuks' claim that affirmative relief was not available unless the Robertsons asserted adverse possession as a counterclaim, rather than as an affirmative defense.  The Yuks make the same argument on appeal.  But despite the Yuks' repeated assertions, prior cases have never required that adverse possession be raised as a counterclaim in a suit to quiet title.[6]  And Alaska Civil Rule 8(c) allows the superior court to treat a mistakenly identified defense as a counterclaim.[7]  The court did not err

---

[4]      *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 204 P.3d 1023, 1026 (Alaska 2009) (citing *Cameron v. Hughes*, 825 P.2d 882, 884 n.2 (Alaska 1992)).

[5]      *Dault v. Shaw*, 322 P.3d 84, 91 (Alaska 2013) (citing *In re Estate of Fields*, 219 P.3d 995, 1002-03 (Alaska 2009)).

[6]      *See, e.g.*, *Glover v. Glover*, 92 P.3d 387, 391, 396 (Alaska 2004) (evaluating appeal of adverse possession claim raised as affirmative defense to original quiet title complaint); *see also Burke v. Maka*, 296 P.3d 976, 979-80 (Alaska 2013) (noting that adverse possession was raised as affirmative defense to original complaint but deciding appeal based on a different affirmative defense).

[7]      Alaska R. Civ. P. 8(c) ("When a party has mistakenly designated a defense as a counterclaim, or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."); *see also*
(continued...)

by granting the Robertsons relief based on their affirmative defense of adverse possession.

The Yuks also claim that the superior court violated Alaska Appellate Rule 214 by citing *Ibarra* in the final summary judgment order.[8] The Yuks argue that because *Ibarra* was unpublished, it "should have limited precedential value." Even assuming Rule 214 applies to judges — and there is no indication that it does[9] — the court first cited *Ibarra* in its order prior to the summary judgment hearing as a similar recently decided case that the parties should be prepared to discuss, and later to help explain its ultimate decision.[10] The court's references to its prior decision were for proper purposes and its ultimate citation in its summary judgment order was not error.

## B. Adverse Possession

The parties agree that pre-2003 adverse possession law applies to this case.[11] Their arguments focus on former AS 09.10.030, which during the relevant period provided:

---

[7]      (...continued)
*Jackson v. Nangle*, 677 P.2d 242, 251-52 (Alaska 1984) (treating defense as counterclaim).

[8]      *See* Alaska R. App. P. 214(d)(1) ("Citation of unpublished decisions in briefs and oral arguments is freely permitted for purposes of establishing res judicata, estoppel, or the law of the case. Citation of unpublished decisions for other purposes is not encouraged.").

[9]      *See* Alaska R. App. P. 214(d) (referring only to citations by parties).

[10]      *See Hallam v. Holland Am. Line, Inc.*, 180 P.3d 955, 959 (Alaska 2008) (noting that "[u]npublished decisions may still have persuasive value").

[11]      *See Cowan v. Yeisley*, 255 P.3d 966, 973 (Alaska 2011) (holding that "the changes to AS[ ]09.10.030 were not intended to be retrospective").

A person may not bring an action for the recovery of real property, or for the recovery of the possession of it unless the action is commenced within 10 years. An action may not be maintained for the recovery unless it appears that the plaintiff, an ancestor, a predecessor, or the grantor of the plaintiff was seized or possessed of the premises in question within 10 years before the commencement of the action.[12]

Under that law a claimant must show by clear and convincing evidence "that for the statutory period [the adverse possessor's] use of the land was continuous, open and notorious, exclusive[,] and hostile to the true owner."[13] The Yuks appeal the superior court's findings of exclusive and hostile possession.

We have defined clear and convincing evidence as "that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved."[14] If an adverse possessor fulfills all four elements for the ten-year statutory period, then title automatically vests in the possessor.[15] "It is well recognized that a fence, as a matter of law, is 'one of the strongest indications of adverse possession.' "[16] And although adverse possession has four distinct elements, "the main

---

[12]     Former AS 09.10.030 (1994), *amended by* ch. 147, §§ 1, 2, SLA 2003; *see* Revisor's notes, AS 09.10.030 (1994) (describing 1994 stylistic changes to 1962 statutory language); *see also Dault v. Shaw*, 322 P.3d 84, 92 (Alaska 2013) (explaining effect of 2003 statutory amendment).

[13]     *Vezey v. Green*, 35 P.3d 14, 20 (Alaska 2001) (quoting *Nome 2000 v. Fagerstrom*, 799 P.2d 304, 309 (Alaska 1990)).

[14]     *Theresa L. v. State, Dep't of Health & Soc. Servs.*, 353 P.3d 831, 838 (Alaska 2015) (quoting *Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 187 (Alaska 2009)).

[15]     *Cowan*, 255 P.3d at 974.

[16]     *Penn v. Ivey*, 615 P.2d 1, 4 n.4 (Alaska 1980) (quoting *Albert v. Declue*,
(continued...)

purpose of nearly all the requirements is essentially the same, that is, to put the record owner on notice of the existence of an adverse claimant."[17]  A fence can provide that required notice.[18]

### 1.    Exclusivity

The Yuks claim on appeal that the superior court erred in its exclusivity finding for two reasons:  (1) "adverse possession cannot lie against the Municipality," and (2) the easement demonstrates that use of the disputed property is shared with the general public and thus not exclusive.  But the superior court correctly determined — contrary to the Yuks' arguments — that the municipal sewer easement on the disputed property did not destroy the Robertsons' exclusivity.  Instead there is "an easement to use the land for a municipal sewer," and "regardless of who owns the fee simple estate," they hold title "subject to the easement."  The Robertsons cannot adversely possess the municipal interest, and they did not claim to do so.  They instead sought to adversely possess the Yuks' interest in the disputed property, subject to the easement.

Nor does the easement demonstrate that the Robertsons have failed to meet the exclusivity requirement.  Exclusivity requires only that the adverse possessor use the land "as an average owner of similar property would use it."[19]  It is " 'not susceptible to

---

[16]    (...continued)
526 S.W.2d 39, 40 (Mo. App. 1975)) (first citing *Knapp v. Wise*, 594 P.2d 1023 (Ariz. App. 1979); then citing *Gospel Echos Chapel Inc. v. Wadsworth*, 507 P.2d 994 (Ariz. App. 1973); then citing *Cole v. Burleson*, 375 So. 2d 1046 (Miss. 1979); and then citing *Swecker v. Dorn*, 593 P.2d 1055 (Mont. 1979)).

[17]    *Peters v. Juneau-Douglas Girl Scout Council*, 519 P.2d 826, 830 (Alaska 1974).

[18]    *See Penn*, 615 P.2d at 4.

[19]    *Vezey v. Green*, 35 P.3d 14, 22 (Alaska 2001) (quoting *Nome 2000 v.* (continued...)

fixed standards,' but rather 'depend[s] on the character of the land in question.' "[20] The record shows a sewer easement on every lot in the subdivision. While using the disputed property the Robertsons remained subject to the easement — and the possibility that the municipality could temporarily disrupt their use of the land — as did all the surrounding landowners.

The Yuks also cite the adverse possession rule that "the statute of limitations does not run in favor of those who occupy property held for public use as a street or highway."[21] Although a sewer easement may serve a public purpose, it is much different in character from a street or highway. And the same authority states that "[a]dverse possession may be established as against a nonpublic entity fee owner despite the existence of easements, including public easements to a county or state."[22] We find such authority more persuasive than the Yuks' suggestion that a municipal easement absolutely bars adverse possession against the private fee owner.

---

[19]    (...continued)
*Fagerstrom*, 799 P.2d 304, 309 (Alaska 1990)) (citing *Peters*, 519 P.2d at 831) (holding that allowing "moderate use of [the] resources" on the property was not inconsistent with exclusive use); *see also Nome 2000*, 799 P.2d at 310 (holding that allowing berry picking and fishing was "consistent with the conduct of a hospitable landowner, and undermines neither the continuity nor exclusivity of their possession"); *Peters*, 519 P.2d at 831 (holding that "occasional use of the beach by clamdiggers or other trespassers does not destroy . . . exclusivity").

[20]    *Vezey*, 35 P.3d at 20 (quoting *Nome 2000*, 799 P.2d at 309) (citing 3 AM. JUR. 2D *Adverse Possession* § 22 (1986)).

[21]    3 AM. JUR. 2D *Adverse Possession* § 261 (2017).

[22]    *Id.* § 253; *see also* 4 TIFFANY REAL PROP. § 1141 (3d ed.), Westlaw (database updated Sept. 2016) ("Possession may be exclusive notwithstanding that the land is subject to rights which are mere easements . . . . [N]or is the existence of an easement over the land in favor of another individual, or of the public, inconsistent with his acquisition of title." (footnotes omitted)).

We affirm the superior court's determination that the sewer easement did not negate exclusivity.

### 2.     Hostility

The superior court correctly determined—contrary to the Yuks' arguments — that the Robertsons' active use of the disputed property, coupled with the fence's existence, satisfied the hostility element of adverse possession. Although the Robertsons mistakenly believed that the enclosed property was theirs, the court found that mistake "immaterial." Despite the Yuks' emphasis on a presumption of permissive use, the court found that the Robertsons' openly adverse and active use of the property, combined with the lack of evidence that the use was ever permissive, weighed in the Robertsons' favor. The Yuks claim the court erred by (1) not requiring that the Robertsons be aware of the fence's encroachment and (2) improperly applying the presumption of permissive use.

The hostility element requires adverse possessors to "prove both that they acted as owners and that they did not act with the true owner's permission."[23] We apply an objective test to determine hostility, and the adverse possessor's "beliefs as to the true legal ownership of the land . . . are irrelevant."[24] The Robertsons mistakenly believed they owned all of the property the fence enclosed. But their apparent mistake does not undermine the hostility of their claim. We have held that "the fact that possession was

---

[23]    *Vezey*, 35 P.3d at 22 (citing *Smith v. Krebs*, 768 P.2d 124, 126 (Alaska 1989)).

[24]    *Peters*, 519 P.2d at 832.

taken under mistake or ignorance of the true boundary lines is immaterial."[25]  Instead, "[t]he question is whether . . . the claimant acted toward the land as if he owned it."[26]

A fence can demonstrate hostile occupation.  In *Penn v. Ivey* we held that using a driveway enclosed by a fence — which, as in this case, did not follow the correct boundary — satisfied the hostility element.[27]  Only the adverse possessors and their guests were permitted to use the driveway, which we observed was "how a record owner would use a driveway."[28]  Here the Robertsons placed playground equipment near the fence and allowed staff and children at the daycare to use the disputed property, thereby using the property as owners would.

The Yuks further argue that the superior court improperly placed the burden on them to disprove permissive use.  We have in many cases applied a presumption of permissive use, placing the burden on the adverse possessor to prove by clear and convincing evidence that the use was not permissive.[29]  To rebut that presumption adverse possessors must show they were "not on the owner's land with permission, and

---

[25]    *Hubbard v. Curtiss*, 684 P.2d 842, 848 (Alaska 1984) (citing *Norgard v. Busher*, 349 P.2d 490 (Or. 1960)).

[26]    *Id.* (quoting *Peters*, 519 P.2d at 832).

[27]    615 P.2d 1, 4 (Alaska 1980).

[28]    *Id.*

[29]    *See, e.g.*, *Vezey v. Green*, 35 P.3d 14, 22-23 (Alaska 2001); *Ayers v. Day & Night Fuel Co.*, 451 P.2d 579, 581 (Alaska 1969); *cf. Dault v. Shaw*, 322 P.3d 84, 93-94 (Alaska 2013)  (applying the presumption to a prescriptive easement and noting that "the crucial fact is that the initial use was by permission").

We have not applied this presumption in every case.  *See Penn*, 615 P.2d at 3 (discussing permissive use without applying presumption); *Alaska Nat'l Bank v. Linck*, 559 P.2d 1049, 1052-54 (Alaska 1977) (not discussing presumption at all).

that the record owner could have ejected" them.[30] That burden can be difficult to overcome if evidence shows possession began permissively, such as with a lease.[31] But absent such evidence we have held the presumption rebutted when the adverse possessor "at all times acted as if the land were his and treated it as his"[32] and "held the property as an owner."[33]

The Yuks present no evidence that the Robertsons ever used the disputed property with permission of the fee owners. And the Robertsons have shown that they treated the disputed property as their own, occupying the strip and using it for their daycare. The fence marks the Robertsons' holding the property as owners, for "[n]o one seeing the fence . . . could have assumed that the [disputed property] belonged to anyone other than the owners of the adjoining [lot]."[34] The Robertsons have overcome the presumption of permissive use by clear and convincing evidence.

We therefore affirm the superior court's determination that the Robertsons proved hostile possession of the disputed property by clear and convincing evidence.

## V. CONCLUSION

Based on the foregoing we AFFIRM the superior court's decision.

---

[30] *Vezey*, 35 P.3d at 22-23 (quoting *Smith v. Krebs*, 768 P.2d 124, 126 (Alaska 1989)).

[31] *See Glover v. Glover*, 92 P.3d 387, 392, 395 (Alaska 2004) (remanding for more factual findings on hostility where occupancy began as a lease); *Ayers*, 451 P.2d at 581-82 (holding adverse possessor failed to overcome presumption in light of evidence he made a rent payment to fee owners).

[32] *Peters v. Juneau-Douglas Girl Scout Council*, 519 P.2d 826, 833 (Alaska 1974).

[33] *Vezey*, 35 P.3d at 23.

[34] *Penn*, 615 P.2d at 4.