### RINGSTAD v. GRANNIS et al.
#### No. 11875.

United States Court of Appeals
Ninth Circuit.
Dec. 2, 1948.

Bailey E. Bell, of Fairbanks, Alaska, for appellant.

Julien A. Hurley, of Fairbanks, Alaska, for appellee.

Before DENMAN, Chief Judge, and HEALY and BONE, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from the District Court of the United States for the Territory of Alaska, Fourth Division. The case was before this court in 159 F.2d 289, where a judgment of nonsuit was reversed. The complaint is in ejectment wherein the plaintiff's right is based on adverse possession of the land involved. The jury returned a verdict for the defendants, and from the judgment entered upon that verdict the plaintiff appeals. Appellant and appellees are hereafter described as plaintiff and defendants.

The complaint alleged that plaintiff "and her predecessors have been in peaceable, adverse, open, notorious possession of the above described property under color of title for more than thirty (30) years last past." It also alleged defendants' trespass in entering the property and tearing down the old fence and the rebuilt fence thereon, and forcibly retaining possession thereof. The prayer was for a judgment of possession of the property restraining defendants from interfering with plaintiff's possession, $100 damages for destruction of the fences and $35 per month damages for loss of use and rentals of the property since June 1945.

The evidence showed that in 1933 plaintiff acquired a deed to lot 3, block 95, Fairbanks, Alaska, from the administrator of one Korlitzky. Lot 3, block 95 runs from Seventh Avenue to Eighth Avenue, as shown on the plat, infra. A predecessor possessor, believing it ran more to the

172

southeasterly, constructed, over 30 years prior to the trial below, a fence running easterly along the Seventh Avenue boundary thence southeasterly to Eighth Avenue at a point 22.9 feet easterly from the south-easterly boundary of lot 3; thence westerly to the southeasterly corner of lot 3; thence northwesterly to the northwesterly boundary of lot 3. This is shown on the following exhibit in evidence:

The defendants have a deed to block 2 shown on the exhibit. The land in dispute is the triangle extending into block 2 between the easterly boundary of lot 3 and easterly and southerly boundaries of the fenced land.

While there is conflicting testimony as to the condition after 1940 of the easterly and southerly fence line, witness Butrovich, who was the administrator of the Korlitzky estate and who had resided in Fairbanks almost all of his 37 years, testified that there was a fence between the lot which plaintiff claims and the defendants' lot standing for fifteen years before he conveyed the property to plaintiff, and for several years after. Korlitzky was in possession of the fenced land when he died.

The undisputed evidence also showed that a house inside the fence and one on defendants' lot 2 were so constructed as to indicate that the respective owners believed the boundary line was as plaintiff claims. The houses, fronting towards Seventh Avenue, were approximately parallel to the easterly fence line. One was about five feet to the westerly of that fence, the other about five feet easterly. The line between lots 2 and 3 as shown by the plat, and which defendants claim is the easterly boundary of plaintiff's lot, goes through a corner of plaintiff's house and cuts off about one-fifth of its structure.

Plaintiff and her predecessors had used the southern portion of the fenced lot, which will be entirely cut off if defendants prevail, as a driveway and for access to the coal chute at the rear of the house. A garden had been planted by plaintiff in the disputed area at one time. A sewer pipe runs parallel to the fenced line, through the area in dispute which was repaired several times a year by one witness. For a short time tenants of plaintiff moved a trailer house on the back of the lot, placing it next to the line claimed by plaintiff. Poles for a radio antenna had been placed in the corners of the lot in the disputed area in 1934 or 1935 and had stood for about five years.

Thus all the evidence shows an adverse, open, continuous use by plaintiff and her predecessors in interest of the property in dispute for 22 years, i. e., from fifteen years before plaintiff bought the lot up to 1940, when it first appears that the fence between the lots may have been down.

■ Compiled Laws of Alaska, § 3354, provides that the period for the commencement of actions shall be as follows:

"Within ten years actions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it shall appear that the plaintiff, his ancestor, predecessor, or grantor was seized or possessed of the premises in question *within ten years before* the commencement of the action." (Emphasis supplied.)

While this statute purports only to bar the remedy, it is clear that it can be the basis of a new title, which may be asserted offensively as well as defensively. In Noble v. Melchoir, 5 Alaska 729, 732, the court said, "The possessory right thus acquired by defendant is a property right, for the protection of which an appropriate action may be maintained by the occupant." This court has so held, sub silentio, in applying the Alaska statute in Milwee v. Waddleton, 9 Cir., 233 F. 989.

At the close of the evidence plaintiff moved for a directed verdict, which was denied, and this denial is assigned as error.

■ The trial court then instructed the jury, in part, that for the plaintiff to be entitled to a verdict "she must prove by a preponderance of the evidence in this case each of the following matters, towit: (1) That she and/or her tenants have had possession of said land in controversy herein for ten years; * * *" Then followed several clauses which defined the requirements of adverse possession. We think this instruction is error in that it failed to let the jury consider the adverse possession of plaintiff's predecessors in interest in determining whether plaintiff had acquired title by adverse possession.

■ One of the requirements for acquisition of title by adverse possession is that the possession must be continuous for the statutory period in order to pre-

vent the original owner's possession from constructively attaching to the land, thus starting the statute running anew, because the owner must be out of possession for ten years in order for the statute to be a bar to an action to recover the land. That the adverse possession may be by different occupants, where a privity exists between them, is almost universally held. 4 Tiffany, Real Property, 3rd Ed., § 1146; 2 C.J.S., Adverse Possession, § 128, page 685. The essential thing is that the continuity of possession is not broken so that the owner's constructive possession will attach and allow him to recover the land.

It is generally held that if, in connection with the conveyance of lands, there are circumstances showing an intent to transfer to the grantee the possession of other adjacent land occupied by the grantor and not covered by the deed, there is created such a privity that the grantee is permitted to tack the period of the grantor's occupancy to his own in establishing title by adverse possession to the land not mentioned in the deed. "Where the deed is followed by the delivery of possession of the entire inclosure, it is sufficient evidence of a transfer of possession to raise the requisite privity between the parties." Rich v. Naffziger, 255 Ill. 98, 99 N.E. 341, 343.

It is the transfer of possession, not title, which is the critical element, because a paper transfer is not necessary to connect adverse possessions. The privity required is that there must be a continuous possession by mutual consent, so that the possession of the true owner shall not constructively intervene. Rich v. Naffziger, supra; Wishart v. McKnight, 178 Mass. 356, 59 N.E. 1028, 86 Am.St.Rep. 486; Belotti v. Bickhardt, 228 N.Y. 296, 127 N.E. 239; Nahar v. Farmer, 60 Wash. 600, 111 P. 768. The Supreme Court of Oregon, in construing their statute, from which the Alaska statute was copied, has said, "But if such successive possessions are connected by any agreement or understanding which has for its object a transfer of the rights of the possessor, and is accompanied by a transfer of possession in fact, it is sufficient

[to constitute a continuous possession]." Vance v. Wood, 22 Or. 77, 85, 29 P. 73, 75. See 5 Thompson, Real Property, (Perm.Ed.), § 2653; note 46 A.L.R. 792, 795 et seq.

Applying these propositions to the facts of the present case, the inference is compelling that plaintiff's possession of the disputed land was obtained by consent of her grantor when she received the deed to lot 3, so the requisite privity is present to allow a tacking of the two possessions. Plaintiff's possession had ripened into title prior to the time when the evidence first indicates the fence between the lots may have disappeared.

We hold that the trial court should have instructed the jury to return a verdict for the plaintiff on the issue of title to the disputed area. Under this view of the case it becomes unnecessary to determine whether plaintiff's deed to lot 3 was sufficient color of title to bring her possession within the terms of § 4313; Compiled Laws of Alaska.

Inasmuch as the jury did not consider plaintiff's claim for damages for loss of rents and the tearing down of the fences, a new trial will be necessary on these issues, so the assignments of error regarding the instructions on damages will be considered. Plaintiff objects to an instruction which required her to prove by a preponderance of the evidence (1) that she had a fence standing upon the land in controversy in May, 1945, which defendants tore down; (2) that such fence was of a specified value in dollars and cents in its standing condition just before it was torn down: (3) that by reason of the tearing down of said fence the plaintiff suffered a definite specified damage in dollars and cents [Instruction VI, (2) (c)]. Plaintiff's objection is on the ground that the instruction does not state the law correctly and it places an extra burden on the plaintiff. The general rule of damages in respect to injury to property is that proof of the value of the damaged property must be as specific as possible, but absolute exactness is not required. 25 C.J.S., Damages, § 162, page 814. "To warrant a recovery based on the value

of property injured or destroyed, there must be proof of its value or evidence of such facts as will warrant a deduction of value with reasonable certainty." 15 Am.Jur. 801, Damages Sec. 361. The instruction given seems only to require that the plaintiff offer evidence as to the pecuniary harm suffered by her as a result of defendants' trespass. In this we see no error.

Plaintiff also objects to an instruction (VI(e) (2)) which required her to prove, in order to recover more than nominal damages for the alleged destruction of the rebuilt fence, "that the defendants then and there destroyed said materials." We fail to see the reason for such an instruction. If the jury found that the fence was torn down by the defendants and that plaintiff was deprived of the materials, that would seem sufficient without requiring plaintiff to prove what defendants did with said materials.

The judgment is reversed and the district court ordered (a) to enter a judgment that plaintiff is the owner of the triangular piece of land above described and is entitled to its possession, and (b) to proceed to trial of the claim of plaintiff against defendants for use and occupancy of the plaintiff's land and the destruction of her fence.