ALASKA NATIONAL BANK, Administrator of the Estate of Eva Randall Taylor, Deceased, Appellant,

v.

Alaska S. LINCK, Individually and as Administratrix of the Estates of James A. Stewart, Deceased, and Christia L. Stewart, Deceased, Appellee.

No. 2754.

Supreme Court of Alaska.

Feb. 7, 1977.

Richard R. Cole, Fairbanks, for appellant.

Lance C. Parrish, Parrish Law Office, Fairbanks, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and BURKE, JJ.

CONNOR, Justice.

This is an action to quiet title to real property. The court below granted summary judgment for plaintiff and appellee Linck, who claims by adverse possession under color of title.

### I

The land in question is an undeveloped parcel of about 44 acres near the Richardson Highway, about 60 miles southeast of Fairbanks. Both parties claim title through James Chisholm, who took the land by patent from the federal government in 1927. In 1939, he conveyed the property by quit-claim deed to Charles E. Taylor.[1] Upon Taylor's death, the property was devised to his widow, Eva Randall Taylor. Alaska National Bank, defendant and appellant (hereafter "the Bank"), is the administrator of the estate of Eva Taylor, now also deceased.

Chisholm made a second conveyance of the parcel, to James A. Stewart, in 1944.[2] As consideration, Stewart paid $2,000 to the territorial department of public welfare to release a lien imposed on the property because Chisholm had received welfare benefits. Stewart also promised to care for Chisholm, an elderly man, for the remainder of his life. Stewart and his wife have both died; their daughter, Alaska S. Linck, brought this action in her own behalf and also as administratrix of their estates.

There is no evidence in the record of any activity by the Taylors in relation to the property. Eva Taylor left Alaska in 1946 and never returned; she died in Oregon in

---

1. Taylor was an attorney, and the deed constituted payment of his fee for services rendered to Chisholm.

2. Both the Taylor and Stewart deeds were promptly recorded.

1971. None of her heirs is an Alaska resident.

On the other hand, Mrs. Linck asserted that her activities and those of her parents were sufficient to establish clear title in her by adverse possession. The factual statements in her affidavit supporting the motion for summary judgment were not contested by the Bank. Its theory in opposing the motion was that the facts Mrs. Linck asserted were insufficient to establish adverse possession.

Mrs. Linck's father planted a sizeable garden on the property for two years beginning in 1956 or 1957. She and her father erected in 1957 and maintained thereafter a barricade to prevent persons from crossing the property to gain access to a nearby Boy Scout camp. They posted a sign prohibiting hunting on the land.

In 1946, pursuant to a territorial statute, Stewart registered his title to this parcel. There is no evidence that the Taylors or anyone else also registered. In 1959 the Department of Fish and Game approached Mrs. Linck to seek an easement over the property. She refused to grant it. In the same year, she removed survey marks placed on the land by the state highway department, and informed it that its trespass on her land was not appreciated. The following year, in a negotiated rather than a forced transaction, she granted a power line easement over the property. Land was then cleared and the power line built. Mrs. Linck visited the land numerous times each year to inspect it and pick up litter.

Mrs. Linck or her parents paid the real property taxes for every year from 1949 through 1967. In the Fairbanks flood of 1967, the borough tax assessor's records were destroyed. In reconstructing the assessment roll by using the files in the recorder's office, the assessor's personnel listed Eva Taylor as owner of this parcel, and in subsequent years sent the tax bills to her.

However, they continued to list Mrs. Linck as the owner of several adjoining parcels. Since the land was described on the tax bills only by code numbers, Mrs. Linck was unaware that she was no longer paying taxes on the parcel in question. Eva Taylor and the Bank paid the taxes for 1968 through 1975.

## II

■ We initially consider two procedural matters. On November 10, 1975 the trial judge entered a written order granting the motion for summary judgment and directing plaintiff to submit a proposed judgment. On December 10 defendant filed a timely notice of appeal from "the Judgment docketed on November 10, 1975." Since the actual judgment was not entered until December 18, the appeal was technically premature. However, the scope of the issues on appeal is clear to both parties, appellee has not raised this point, and no injustice will result from our treating this appeal as properly taken from the December 18 judgment. Hence we so consider it. Appellate Rule 46; *Edwards v. Franke,* 364 P.2d 60, 61–62 (Alaska 1961).

■ We are reviewing a grant of summary judgment. Summary judgment is proper only if "there is no genuine issue as to any material fact". Civil Rule 56(c). If the evidence is conflicting or doubtful the question of adverse possession is for the jury. If the evidence is clear and undisputed it becomes a question of law for the court. *Deponte v. Ulupalakua Ranch, Ltd.,* 395 P.2d 273, 275 (Hawaii 1964), *rehg. denied,* 396 P.2d 826 (Hawaii 1964); *Thomas v. State,* 514 P.2d 572, 575 (Hawaii 1973); *Chittim v. Auld,* 219 S.W.2d 702, 706 (Tex. Civ.App.1949). The facts in Mrs. Linck's affidavit were not controverted. If those facts sufficiently demonstrate adverse possession, only a question of applicable law remains.[3]

---

**3.** In *Hickel v. Stevenson,* 416 P.2d 236, 237–38 (Alaska 1966), we affirmed a grant of summary judgment where the party opposing the motion did not suggest what the material issues of fact were. *Cf.* Civil Rule 56(c): "The adverse party . . . may serve . . . a concise 'statement of genuine issues' . . . ." The case at bar is similar; no such statement was served.

## III

Alaska has two adverse possession statutes. Under AS 09.25.050, when possession is under "color and claim of title" the statutory period is seven years.[4] In other cases, under AS 09.10.030 the statutory period is ten years.[5] The Bank concedes that Mrs. Linck and her parents have "color and claim of title"; hence AS 09.25.050 is the applicable statute and the question is whether they had "uninterrupted adverse notorious possession" for seven years.

■ The adjectives used to describe the requirements of adverse possession are numerous.[6] AS 09.25.050 has three: uninterrupted, adverse and notorious. These represent the three concepts underlying the law of adverse possession: (1) the possession must have been continuous and uninterrupted; (2) the possessor must have acted as if he were the owner and not merely one acting with the permission of the owner; and (3) the possession must have been reasonably visible to the record owner. *See* 7 R. Powell, *The Law of Real Property* ¶¶ 1013–15 (1968). We will consider each of these three in turn.

■ The first requirement for acquisition of title by adverse possession is that the possession must have been continuous and uninterrupted for the statutory period, so that the actor acquires the status of a possessor and not a mere trespasser. W. Burby, *Handbook of the Law of Real Property* § 111, at 271 (3rd ed. 1965). This does not necessarily mean that the possessor must reside on or be physically present at

the property. *Manville v. Gronniger,* 182 Kan. 572, 322 P.2d 789, 793 (1958); 3 Am. Jur.2d Adverse Possession §§ 20, 56 (1962). *See generally Kellogg v. Huffman,* 137 Cal. App. 278, 30 P.2d 593, 596–99 (1934). The nature of possession sufficient to meet this requirement depends on the character of the property. One test is whether the adverse possessor has used and enjoyed the land as "an average owner of similar property would use and enjoy it." 3 *Am. Law of Property* § 15.3, at 765 (A. J. Casner ed. 1952). *See Fritts .v. Ericson,* 103 Ariz. 33, 436 P.2d 582, 584–85 (1968); *Cooper v. Carter Oil Co.,* 7 Utah 2d 9, 316 P.2d 320 (1957) (pasturing of sheep for three weeks a year is sufficient where land is suitable only for grazing); 3 *Am. Law of Property, supra,* § 15.3, at 766–67 and cases cited therein.

■ An interruption of possession caused by the record owner or third parties, or abandonment by the possessor, tolls the running of the statute of limitations. Neither the Taylors nor any third party interrupted Mrs. Linck's family's possession of this parcel. The question is whether their own possession was sufficiently continuous and uninterrupted.

■ We hold that it was. Any one of the acts to which she testified might, standing alone, be insufficient, but in combination they demonstrate continuous and uninterrupted possession. She testified to multiple visits to the property during each year from 1957 through 1970. She and her predecessors in interest[7] cleared part of the land,[8] built and maintained barricades, and kept the property clean.

4. AS 09.25.050 reads:
   "The uninterrupted adverse notorious possession of · real property under color and claim of title for seven years or more is conclusively presumed to give title to the property except as against the state or the United States."

5. AS 09.10.030 reads:
   "No person may bring an action for the recovery of real property, or for the recovery of the possession of it unless commenced within 10 years. No action may be maintained for the recovery unless it appears that the plaintiff, his ancestor, predecessor, or grantor was seized or possessed of the premises in ques-

tion within 10 years before the commencement of the action."

6. Continuous, uninterrupted, nonpermissive, hostile, adverse, exclusive, actual, open, notorious, and visible are among the more common ones.

7. Mrs. Linck is entitled to tack the period of her father's and her mother's possession to her own, to meet the seven-year requirement. *Ringstad v. Grannis,* 171 F.2d 170, 174, 12 Alaska 190, 197 (9th Cir. 1948).

8. Because Mrs. Linck claims under color of title, acts of dominion over part of the parcel constitute adverse possession of all the land described in the deed to James Stewart through

1053

Other courts have found similar activity sufficient for adverse possession of forested land in rural areas. *See, e. g., Monroe v. Rawlings,* 331 Mich. 49, 49 N.W.2d 55, 56 (1951) (6 visits per year to hunting cabin plus some timber cutting found sufficient where land was wild and undeveloped); Annot., 24 A.L.R.2d 632 (1952) and cases cited therein. *But see W. T. Carter & Bro. v. Ruth,* 275 S.W.2d 126, 130–31 (Tex.Civ. App.1955).

■ The second requirement for adverse possession is that the possessor must have acted as if he owned the land, *Peters v. Juneau-Douglas Girl Scout Council,* 519 P.2d 826, 830–31 (Alaska 1974), rather than as if he were merely on the land with the permission of the true owner. This is frequently described as adverse or hostile.[9] The evidence clearly supports the trial court's finding that the Stewarts and Mrs. Linck met this requirement. They dealt with public agencies and other third parties as if they were the owners. They excluded others from the land. They paid the taxes on the property for at least nineteen consecutive years.[10]

■ The final requirement of the adverse possession under AS 09.25.050 is that possession must be "notorious," so that if the owner visits the property, he would be put on notice and be able to assert his rights. *See, e. g., Murray v. Bousquet,* 154 Wash. 42, 280 P. 935, 938 (1929). The owner need not actually know about the presence of an adverse possessor; "[w]hat a duly alert owner would have known the

owner is charged with knowing." 7 R. Powell, *supra* ¶ 1013, at 714 (footnote omitted). *See, e. g., Sorensen v. Costa,* 32 Cal.2d 453, 196 P.2d 900, 905 (1948); *Calkins v. Kousouros,* 72 Idaho 150, 237 P.2d 1053, 1054 (1951). Where possession is otherwise proven, courts generally recognize that community repute as well as physical visibility is relevant evidence that the true owner has been put on notice. Annot., 40 A.L.R.2d 770 (1955). However, as with the other elements of adverse possession, to determine what constitutes sufficient notoriety we must consider the character of the land. We cannot expect the possessor of uninhabited and forested land to do what the possessor of urban residential land would do before we charge the record owner with notice.

■ In the case at bar, there is sufficient evidence to meet the notoriety requirement. The Taylors would have seen Mr. Stewart's garden if they had visited the property in the summer of 1957. Had they visited at any time for several years thereafter, they would have seen a barricade to keep people from crossing the property. The Taylors would have learned from talking to neighbors that Mrs. Linck told them to make sure the barricade was kept closed. After 1961, the Taylors would have been able to see an electric power line, the land that had been cleared to make way for it, and an access road to maintain it.[11] Finally, had they visited during any summer in the 1960's they presumably would have noticed that someone had been picking up litter.

which she claims. *Lott v. Muldoon Road Baptist Church, Inc.,* 466 P.2d 815, 817–18 (Alaska 1970).

**9.** "The essence of adverseness which will give the necessary cause of action is a possession which is inconsistent with and hostile to the rights of the true owner." 3 *Am. Law of Property, supra* § 15.4, at 772.

**10.** Some statutes require that an adverse possessor pay the real property taxes for the statutory period. *See, e. g.,* Cal.Code Civ.Proc. § 325 (West 1954); Idaho Code § 5–210 (1948). While Alaska's does not, payment of taxes is evidence that the adverse possessor is acting as

if he owned the land. *See, e. g., Richterberg v. Wittich Mem. Church,* 222 F.Supp. 324, 328 (W.D.Okl.1963); 7 R. Powell, *supra* ʽ 1018, at 746.

**11.** Since Mrs. Linck and the Golden Valley Electric Association were in privity, as grantor and grantee of the easement, the electric association's activity can be tacked to Mrs. Linck's acts of possession, and she can use it to support her claim to title by adverse possession, subject to the easement. *See Ringstad v. Grannis, supra,* 171 F.2d at 174, 12 Alaska at 197.

Mrs. Linck's possession was also visible in ways other than physically. When the Department of Fish and Game and the Golden Valley Electric Association needed to find the owner to negotiate for easements, Mrs. Linck was the only owner visible to them. She was the only owner visible to the tax assessor until 1967. Had the Taylors sought information from the same sources, they presumably also would have been led to Mrs. Linck.

Many years ago, the Indiana Court of Appeals held that adverse possession must be such that the owner could see "that an enemy was flying a hostile flag over his property." *Philbin v. Carr*, 75 Ind.App. 560, 129 N.E. 19, 30 (1920) We believe that the Stewarts and Mrs. Linck figuratively hoisted such a flag over these lots. It caught the eye of state agencies and a public utility. Had the Taylors looked, we believe it would have caught their eye as well.

The record reveals nothing that the Taylors did with respect to this land. Mrs. Linck and her parents sought to maintain and protect it. They dealt with the state agencies and the public utility that desired to use the land. Mrs. Linck paid taxes regularly until 1968 when through no fault of hers and without her knowledge the tax assessor's office began billing Eva Taylor.[12]

The trial court's decision furthers the public policies underlying the law of adverse possession. While, like other statutes of limitations, the adverse possession statutes keep stale cases out of the courts, they serve other important public policies as well. They exist because of a belief "that title to land should not long be in doubt, that society will benefit from someone's making use of land the owner leaves idle, and that third persons who come to regard the occupant as owner may be protected."

Stoebuck, The Law of Adverse Possession in Washington, 35 Wash.L.Rev. 53 (1960).

AFFIRMED.

ERWIN, J., not participating.

---

12. The period from 1957, when the first of the specific acts mentioned by Mrs. Linck took place, through 1967, apparently the last year for which Mrs. Linck paid taxes on the property, is well in excess of the seven-year period specified by statute. We therefore need not consider whether the conduct of Mrs. Linck and her predecessors in the years 1944–56 and 1968–75 was also sufficient to meet the standard of the adverse possession statute.